The primary question — whether plaintiff is entitled to additional temporary total disability benefits — was resolved by the Deputy Commissioner based on her first hand evaluation of the witnesses, and ample supporting expert medical opinion evidence that she failed to accept suitable employment, and no good ground appears for reaching a different result. However, there is persuasive evidence of subsequent necessary medical treatment. Consequently, with modifications, the hearing Deputy's decision is adopted.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for the modification or addition of Findings of Fact 7-10, the Conclusions of Law, and Award paragraphs 2 and 3, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the employment relationship existed between the parties on October 15, 1993, which is the date of the injury giving rise to this claim.
2. The defendant was self-insured with Key Risk Management Services as the servicing agent.
3. Plaintiff's average weekly wage was $273.04 which yields a compensation rate of $182.04 per week.
4. The parties stipulated 52 pages of documents into the record.
5. A Form 24 Application of Employer or Carrier to Stop Payment of Compensation was approved by the Commission on January 12, 1994. Plaintiff received 8 6/7 weeks of temporary total compensation from October 15, 1993 to December 15, 1993. On December 16, 1993, the plaintiff was released to return to light duty work by Dr. George Miller.
* * * * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a 25-year old female high school graduate who was married and the mother of minor children ages 2 and 4.
2. Then plaintiff began working with defendant in April of 1990, where she was a biscuit and sandwich maker. Plaintiff's duties required her to lift 25 pound bags of flour, to mix and kneed dough, roll dough, cut biscuits, and bake them. At lunch time, the plaintiff also prepared sandwiches.
3. In September of 1993, the plaintiff experienced problems with her right hand. She was diagnosed with bilateral carpal tunnel syndrome. On October 15, 1993, the plaintiff underwent right carpal tunnel release surgery, which was performed by orthopaedist Dr. George Miller.
4. Dr. Miller released the plaintiff to return to light duty work on November 29, 1993. The plaintiff reported for work but left after experiencing severe pain in the palmar region of her right hand. She returned to Dr. Miller on December 2, 1993 with these complaints, as well as complaints of left wrist pain, Dr. Miller noted she had a negative Phalen's, and advised her to return to work.
5. A job analysis of a sandwich maker/cash register operator was performed by Carolyn Dorsett of Southern Rehabilitation Network, and on December 15, 1993, Dr. Miller approved this job as being well within plaintiff's capabilities. Plaintiff was authorized to return to work on December 16, 1993.
6. Ms. Dorsett contacted the plaintiff's home by telephone on December 15 and 16, 1993 regarding her return to work. The plaintiff reported to work on December 16, 1993, and at that time she advised Mr. Granville Lilley, owner of King Chicken Drive Inn, that she wanted to work on a part-time basis to accommodate her schedule at Pitt Community College. Mr. Lilley advised the plaintiff that full-time work was needed. The plaintiff did not tell Mr. Lilley that she was unable to do the sandwich maker/cashier job because she did not want a full time job because she had enrolled in school to better herself.
7. The plaintiff self-referred to Dr. Miller for treatment, and was not sent there by the defendants, on January 13, 1994. Dr. Miller found that plaintiff had regained full range of motion, normal motor strength, and no hypesthesias in the medial distribution. Dr. Miller believed she had reached maximum medical improvement, and she was rated as having zero permanent impairment. She was released to full activity. Thereafter, she sought employment at several businesses that were not hiring.
8. Following rating and release by Dr. Miller, plaintiff returned to him complaining of continuing discomfort. He declined to prescribe physical therapy or splinting, and seemed to her to be unwilling even to examine her. Consequently, plaintiff sought treatment for "consistent pain" at Washington Family Medicine Center on March 24 and April 7, 1994, under circumstances she regarded as "an emergency type situation,"and made a timely motion to the Commission for a change of treatment and provider on April 5, 1994. Defendants opposed the request, and the Commission's Chief Claims Examiner deferred a ruling on the motion until the pending hearing before a Deputy Commissioner.
9. On referral by the Washington Family Medicine Center, plaintiff saw Dr. Gene T. Hamilton On May 4, 1994 for a second opinion. He found that plaintiff had benefited by the surgery, but continued to have weakness and pain and prescribed the continuation of oral anti-inflammatory medication and occupational therapy at Carolina Occupational Therapy in Greenville. Plaintiff's symptoms improved with therapy, and she was discharged from "active follow-up" by Dr. Hamilton on June 28, 1994, with instructions to continue home therapy. Plaintiff had not reached maximum medical improvement at that time. These providers never told the plaintiff that she could not work, and during this period she continued to attend Pitt Community College and seek employment.
10. Plaintiff was entitled to a second opinion examination upon Dr. Miller's rating and release. Subsequent medical evaluation revealed a need for additional treatment of plaintiff's compensable condition, which did in fact give the plaintiff relief. Plaintiff made a timely motion to the Commission for a change in treatment and provider.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. The plaintiff is not entitled to any additional temporary total disability compensation as a result of her refusal to accept light work which was approved by her treating physician and offered to her by the employer.
2. This claim remains open for determination of whether the plaintiff is entitled to permanent partial disability compensation.
3. Plaintiff was entitled to a second opinion examination by a physician of her choosing at defendants' expense following the rating and release by her treating physician. N.C.G.S. § 97-27 (a). Plaintiff timely moved the Commission for a change in treatment and provider, and the treatment sought did in fact give the plaintiff relief from symptoms resulting from the compensable injury. N.C.G.S. § 97-25; Schofield v. Great Atl. Pac. Tea Co.,299 N.C. 582, 264 S.E.2d 56 (1980); Forrest v. Pitt Co. Bd. ofEduc., 100 N.C. App. 119, 127, 394 S.E.2d 659 (1990).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim for additional temporary total disability compensation is and under the law must be DENIED.
2. Defendants shall pay the bills for medical compensation of Washington Family Medicine Center, Dr. Gene T. Hamilton, and Carolina Occupational Therapy, when the same have been submitted by the defendants to, and approved by, the Commission.
3. Plaintiff is authorized to return to Dr. Hamilton at defendant's expense for such medical attention as may be reasonably required to effect a cure, give relief or shorten any recurring period of disability as a result of the subject injury.
4. Each side shall pay its own costs.
 S/ ________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ________________ EDWARD GARNER, JR. DEPUTY COMMISSIONER
S/ ________________ GEORGE T. GLENN, II DEPUTY COMMISSIONER
JRW/tmd 5/18/95