Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
STIPULATIONS
1. The parties are subject and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At the time of the alleged injuries of August 4, 1993 and April 6, 1994, an employment relationship existed between the plaintiff and defendant-employer.
3. The carrier on the risk is Hartford Accident and Indemnity Company.
4. The plaintiff's average weekly wage for the August 4, 1993 claim is $200.00 and the average weekly wage for the April 6, 1994 claim may be determined by an I.C. Form 22 stipulated into evidence.
* * * * * * * * * * * * * *
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 37 years old, had a high school degree and certification as a nursing assistant, and was attending college to become a licensed nurse practitioner. Her work experience included positions as a knitter, a weaver, a service manager and a sales assistant.
2. In February 1993, plaintiff began inspecting T-shirts and sweatshirts for the Quality Control Department of Pluma, the defendant-employer.
3. On August 3, 1993, plaintiff struck her right wrist on equipment at Pluma and thereafter was treated by Dr. Robert V. Sypher, Jr., an orthopedic hand surgeon, for a right volar ganglion cyst. On October 28, 1993, Dr. Sypher removed plaintiff's ganglion cyst, and as of November 29, 1993, the plaintiff was returned to light duty work. Defendant-employer provided plaintiff with suitable light duty employment. Dr. Sypher found plaintiff to be at maximum improvement on January 5, 1994 and rated plaintiff with a zero percent (0%) permanent partial impairment as a result of the August 3, 1993 accident.
4. Defendants accepted the August 3, 1993 accident as compensable, entering into an I.C. Form 21 agreement which was approved on April 27, 1994. (I.C. No. 368377) In addition to payment of medical expenses, defendants paid plaintiff approximately ten weeks of temporary total and temporary partial disability benefits until her return to full duty work.
5. After her return to work in November 1993, plaintiff worked full-time inspecting T-shirts and sweatshirts for defendant-employer. On or about April 6, 1994, plaintiff began experiencing pain and swelling in her right wrist and thumb.
6. Plaintiff was again evaluated by Dr. Sypher on April 11, 1994 and reported to the physician that she had done "quite well" following her previous treatment for the removal of the ganglion cyst. Dr. Sypher ordered nerve conduction studies and an EMG which were performed on May 6, 1994. Both studies were normal and Dr. Sypher thus ruled out a diagnosis of carpal tunnel syndrome. On May 20, 1994, plaintiff underwent a second opinion evaluation by Dr. Titus Plomaritis, Jr. who indicated he did not know the etiology of plaintiff's condition and made no recommendation for surgical intervention. Dr. Sypher likewise did not recommend surgery and treated the plaintiff conservatively. Dr. Sypher authorized the plaintiff to return to light duty work at Pluma on June 3, 1994 and to full duty work as of June 27, 1994. At the time he released her to full duties, Dr. Sypher did not render any permanent partial impairment rating. Defendant-employer again provided plaintiff with suitable employment.
7. Defendants accepted plaintiff's April 6, 1994 occupational disease claim as compensable and paid her temporary total and temporary partial disability benefits from April 7, 1994 through her return to work at Pluma in June 1994. (I.C. No. 432406) The defendants further paid for plaintiff's medical expenses and treatment with Dr. Sypher and Dr. Plomaritis.
8. The treatment provided to plaintiff by Dr. Sypher following the April 6, 1994 claim was competent, reasonable and appropriate. Dr. Sypher is a board certified orthopedic surgeon with a sub-specialty in hand and microsurgery. He had knowledge of plaintiff's history and her condition as he had treated her previously. He had lengthy experience in treating patients with hand complaints. Defendants further provided additional medical care, at their expense, to plaintiff in the form of a second opinion with Dr. Plomaritis.
9. Instead of continuing with the treatment provided by Dr. Sypher and having it paid for by defendants, plaintiff sought treatment from Dr. Anthony J. DeFranzo, who first examined her on August 9, 1994. In contradiction to Dr. Sypher and Dr. Plomaritis, Dr. DeFranzo diagnosed carpal tunnel syndrome and recommended surgery. The plaintiff went out of work on September 13, 1994 with Dr. DeFranzo's authorization.
10. Plaintiff did not seek authorization for treatment with Dr. DeFranzo from either the defendants or the Industrial Commission. Defendants learned of plaintiff's treatment with Dr. DeFranzo just days before the surgery recommended by the physician. Both Lance Ray, plaintiff's supervisor, and Danny Harold, Plant Safety Coordinator at Pluma, clearly informed plaintiff that treatment with Dr. DeFranzo was unauthorized and that defendants would not pay for her surgery or time out of work. Plaintiff acknowledged that she was aware that her treatment with Dr. DeFranzo was unauthorized and that neither her time out of work nor the surgery would be paid for by defendants. Mr. Harold and Mr. Ray did offer the plaintiff the opportunity to obtain another medical opinion at defendants' cost prior to surgery, but plaintiff refused.
11. On October 10, 1994, Dr. DeFranzo performed the unauthorized surgery on plaintiff. On November 21, 1994, plaintiff was released to light duty work and on December 6, 1994, she was released to her regular job duties. However, plaintiff continued to have difficulties with pain, numbness and muscle weakness in her right hand and did not seek work for any extended period of time. Following her release by Dr. DeFranzo, plaintiff was offered suitable employment by Pluma, but the plaintiff refused to accept such positions.
12. In September 1995, plaintiff returned to school to become a Certified Nursing Assistant and Licensed Nurse Practitioner. On September 25, 1995, plaintiff began working full-time at Bryan Industries earning $6.25 per hour. At the time of the hearing, plaintiff was working for Bryan Industries and attending college.
13. The plaintiff failed to seek and obtain approval for the treatment by Dr. DeFranzo from the defendants or Industrial Commission within a reasonable period of time. The plaintiff failed to prove that the treatment provided by Dr. DeFranzo was on an emergency basis. The plaintiff has failed to establish that the treatment she received from Dr. DeFranzo was necessary or did in fact effect a cure, give relief or lessen the period of disability.
14. The plaintiff failed to establish that her time out of work from September 13, 1994 until September 25, 1995 was the result of an inability to earn any wages caused by the compensable April 6, 1994 occupational disease.
15. In January 1996, after plaintiff had been working at Bryan Industries for several months, she developed a cyst on her right wrist. At the time she developed such cyst, plaintiff had not worked for defendant-employer Pluma in approximately two years.
16. On March 14, 1996, Dr. DeFranzo removed the cyst. Both Dr. DeFranzo and Dr. Sypher testified regarding the cyst. Dr. DeFranzo testified that the cyst was a recurrence of the ganglion cyst that had been removed in 1993. However, Dr. Sypher opined that the ganglion cyst is an ordinary condition of life and failed to causally relate the 1996 cyst to the prior compensable cyst of 1993. The Full Commission gives more weight to the testimony of Dr. Sypher because he treated the plaintiff for the 1993 cyst. Further, the testimony of Dr. DeFranzo was speculative in nature.
17. Plaintiff has failed to establish by the greater weight of the evidence that the cyst of 1996 was caused by, related to, or traceable to the plaintiff's employment with the defendant-employer or plaintiff's compensable cyst of 1993.
18. Pursuant to the opinion of Dr. Sypher, plaintiff suffered no permanent partial impairment as a result of the August 4, 1993 injury — the cyst. Dr. DeFranzo rated the plaintiff with a fifteen percent (15%) permanent partial impairment as a result of the August 3, 1993 cyst, the April 6, 1994 claim and the January 1996 cyst. However, Dr. DeFranzo did not apportion the rating to each claim. Dr. Sypher's rating of zero percent (0%) is given the greater weight as to the August 3, 1993 claim. Finally, plaintiff has failed to prove any permanent partial disability attributable to the April 6, 1994 occupational disease.
* * * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
CONCLUSION OF LAW
1. The plaintiff's cyst of 1996 was not caused by, related to, or traceable to the plaintiff's employment with the defendant-employer or plaintiff's compensable cyst of 1993, and she is therefore not entitled to compensation for said injury under the North Carolina Workers' Compensation Act. (I.C. No. 368377) N.C.G.S. § 97-2 et seq.
2. The plaintiff is entitled to have the defendants provide all medical compensation arising from the compensable occupational disease of April 6, 1994. (I.C. No. 432406) However, the defendants are not responsible for any medical expenses which resulted from the treatment and services rendered by Dr. DeFranzo as such treatment was unauthorized and the plaintiff did not seek approval within a reasonable time, said treatment was not sought due to an emergency, and said treatment did not effect a cure, give relief, or lessen the plaintiff's disability. N.C.G.S. § 97-25; Forrest v. Pitt County Bd. of Education, 100 N.C. App. 119
(1990), aff'd 328 N.C. 327 (1991).
3. The plaintiff did not establish that she was temporarily and totally disabled from September 13, 1994 until September 25, 1995 as a result of the compensable occupational disease of April 6, 1994. (I.C. No. 432402) She is therefore not entitled to compensation for any loss of wages for that period. N.C.G.S. § 97-29.
4. The plaintiff has failed to establish that she has suffered any permanent partial impairment as a result of either claim. N.C.G.S. § 97-31.
* * * * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. The plaintiff's claim for further workers' compensation benefits and medical expenses arising out of the August 4, 1993 claim must, under the law, be and is hereby DENIED.
2. The defendants shall pay all medical compensation resulting from the compensable occupational disease of April 6, 1994. However, the defendants are not responsible for any medical expenses which resulted from the treatment and services rendered by Dr. DeFranzo.
3. The plaintiff's claim for temporary total disability compensation for the period from September 13, 1994 until September 25, 1995 is DENIED.
4. The plaintiff's claim for compensation for permanent partial disability is DENIED.
5. Each side shall pay its own costs.
 S/ _________________ EDWARD GARNER, JR DEPUTY COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, Jr. CHAIRMAN
S/ _______________ LAURA K. MAVRETIC COMMISSIONER
EG:jth